JOSE E. RAMOS,
   Plaintiff,

   v.

UNIVERSITY OF CONNECTICUT
HEALTH CENTER, *et al.*,
   Defendants.

No. 3:17-cv-326 (VAB)

### *CORRECTED* RULING ON AMENDED COMPLAINT AND PENDING MOTIONS

Jose Ramos ("Plaintiff"), proceeding *pro se*, is incarcerated in the MacDougall building at the MacDougall-Walker Correctional Institution ("MacDougall") in Suffield, Connecticut. He has sued the University of Connecticut Health Center ("UCONN"), Commissioner Scott Semple, Wardens Carol Chapdelaine and William Mulligan, Drs. Syed Naqvi and Kevin McCrystal, Nurse Jane Doe, Nurse Supervisor, and Medical Supervisor Heidi Greene (collectively "Defendants") under 42 U.S.C. § 1983.

Mr. Ramos has filed an Amended Complaint. ECF No. 14. He has also filed a number of motions, including: a motion for service of the Complaint; a motion for default; two motions for default judgment; a motion for ruling on the motion for default judgment; a motion to file an affidavit; a motion for preliminary injunction; and a motion for copies of documents.

For the following reasons, the Amended Complaint is **DISMISSED** in part and the motion for service of summons and the Complaint is **DENIED** as moot. The remaining pending motions are **DENIED**.

### I. BACKGROUND

Mr. Ramos sued Defendants on February 23, 2017, ECF No. 1, and filed an Amended

Complaint on August 29, 2017. ECF No. 14.

In the Amended Complaint, Mr. Ramos alleges that, in October 2012, medical staff at Corrigan Correctional Institution ("Corrigan") prescribed Motrin to treat his shoulder pain. Am. Compl., ECF No. 14, at 7 ¶¶ 1–2. Mr. Ramos claims that the pain stemmed from a shoulder injury sustained during his arrest. *Id.* ¶ 1.

Beginning in May 2016, Mr. Ramos allegedly did not receive Motrin for several months. *Id.* ¶ 3. After prison officials transferred Mr. Ramos to the Walker building, a physician prescribed Mr. Ramos Ibuprofen for pain. *Id.* at 13, Ex. A. On June 13, 2016, Dr. Naqvi, a physician at MacDougall, prescribed Mr. Ramos 600 milligrams of Motrin to be taken twice a day for two months. *Id.* at 16, Ex. B. On July 31, 2016, Mr. Ramos submitted two requests to the medical department at MacDougall. *Id.* at 13–14, Ex. A. In the first request, Mr. Ramos sought a bulk medication prescription for Motrin and to be seen by a doctor. *Id.* at 13, Ex. A. He claimed that he had not been receiving his bulk medication since he had arrived at MacDougall and was experiencing severe shoulder pain. *See id.* He also informed medical staff that he was supposed to be doing rubber band exercises. *See id.*

In the second request, Mr. Ramos sought bulk pain medication and to be seen by a doctor or other medical staff member. *Id.* at 14, Ex. A. He again informed medical staff that he was supposed to be doing rubber band exercises. *Id.* In response, on an unidentified date in August 2016, a medical staff member scanned an order for Motrin to the pharmacy, indicated that there was no order to do rubber band exercises, and put Mr. Ramos on the sick call list to see a physician. *Id.*

Mr. Ramos states that he did not see a doctor until June 27, 2017. *Id.* at 8 ¶¶ 7–8. On that

date, correctional staff allegedly woke Mr. Ramos up and escorted him to the medical

department. *Id.* ¶ 7. Dr. Kevin McCrystal allegedly informed Mr. Ramos that he was going to

examine him in connection with his asthma condition. *Id.* ¶¶ 8–9. Mr. Ramos allegedly informed

Dr. McCrystal and that he had been seeking an appointment with a physician for a year for other

medical conditions. *Id.* ¶ 10. Dr. McCrystal allegedly directed Mr. Ramos to submit a sick call

request. *Id.* ¶ 11. When Mr. Ramos stated that he had already submitted requests for treatment,

Dr. McCrystal allegedly became upset and accused Mr. Ramos of being a liar and of changing

his story regarding his requests for treatment. *Id.* ¶¶ 12–14. Dr. McCrystal allegedly then

discontinued Mr. Ramos's prescription for pain medication. *Id.* ¶ 14.

Mr. Ramos claims that Defendants violated his First, Eighth, Ninth, and Fourteenth

Amendment rights. *Id.* at 9 ¶ 21. He seeks monetary damages and injunctive and declaratory

relief. *Id.* ¶¶ 22–26.

## II.    STANDARD OF REVIEW

### A.    Initial Review

Under 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against

governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious,

or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a

defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### B.  Entry of Default and Default Judgment

Federal Rule of Civil Procedure 55 provides a two-step process to obtain a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step is to seek entry of default. *Id.* "When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended." *Id.* "Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." *Coles v. Lieberman, Michaels & Kelly, LLC*, No. 10-cv-484S, 2011 WL 3176467, at *1 (W.D.N.Y. July 27, 2011) (citation omitted); see also *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d 105, 108 ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.") (citing *Greyhound Exhibitgroup, Inc. v.*

*E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.")).

The second step is to seek a default judgment under Rule 55(b). "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. *See* Fed. R. Civ. P. 55(b)(1). 'In all other cases,' Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Under Rule 55(b)(2), a court must determine whether liability is appropriate, based on the facts alleged in the Complaints. *Coles*, 2011 WL 3176467, at *1 (citation omitted); accord *United States v. Bunbury*, 15-cv-3764 (JS), 2015 9050581, at *1 (E.D.N.Y. Dec. 15, 2015) ("[I]n determining a motion for default judgment, the Court is responsible for ensuring that the pleadings provide an appropriate basis for liability." (citing *United States v. Kemp*, No. 15-cv-02419 (PKC), 2015 WL 6620624, at *2 (E.D.N.Y. Oct. 30, 2015))). The court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: [] conduct an accounting; [] determine the amount of damages; [] establish the trust of any allegation by evidence; or [] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

### C.      Injunctive Relief

Preliminary injunctive relief "is an 'extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To warrant preliminary injunctive relief, the moving party must

demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks omitted).

If a party seeks a permanent injunction, he or she "must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). Thus, the standard for a permanent injunction is similar to the standard for a preliminary injunction, but a plaintiff must show actual success rather than a likelihood of success. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

## III.   DISCUSSION

### A.   Amended Complaint

#### 1.   University of Connecticut

To state a claim under section 1983, Mr. Ramos must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). The Supreme Court has held that a state agency is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

Because UCONN is a state agency, it is not considered to be a person subject to suit under section 1983. *See Gaby v. Board of Trustees of Community Technical Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their

boards of trustees are not persons within the meaning of section 1983); *Stewart v. John Dempsey Hospital*, No. 3:03-cv-1703 (WWE), 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of Connecticut Health Center is not a person within the meaning of section 1983); *Jolly v. Correctional Managed Health Care*, No. 3:04-cv-1582 (RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009) (holding that Correctional Managed Health Care, as "a division of a state agency, the University of Connecticut Health Center," is not a person within the meaning of § 1983), *aff'd*, 375 Fed. App'x 67 (2d Cir. 2010); *Cassells v. Univ. Hosp. at Stony Brook*, No. 86 C 0698, 1987 WL 3717, at *4 (E.D.N.Y. Jan. 12, 1987) ("[P]laintiff's section 1983 claim against State University and University Hospital must fall because neither is a "person" within the meaning of section 1983.").

Accordingly, consistent with 28 U.S.C. § 1915A(b)(1), Mr. Ramos's claims against UCONN are dismissed as lacking a basis in law.

### 2. Semple, Chapdelaine, Mulligan, Greene, Nurse Supervisor and Doe

Mr. Ramos describes Scott Semple as the Commissioner of Correction and Carol Chapdelaine and William Mulligan as Wardens of MacDougall. None of these Defendants are medical providers. Mr. Ramos also does not mention any of these Defendants in the body of the Complaint. As a result, Mr. Ramos has not alleged that Commissioner Semple, Warden Mulligan, or Warden Chapdelaine violated his federally or constitutionally protected rights.

Mr. Ramos also names Medical Supervisor Heidi Greene, a Nursing Supervisor and a Jane Doe Nurse as defendants. He identifies them as employees at MacDougall. He does not, however, refer to or mention these defendants in the body of the Complaint. Thus, Mr. Ramos

has not alleged that Nurse Supervisor, Nurse Jane Doe, or Medical Supervisor Heidi Greene violated his constitutionally or federally protected rights.

Accordingly, consistent with 28 U.S.C. § 1915A(b)(1), Mr. Ramos's claims against Semple, Chapdelaine, Mulligan, Greene, Jane Doe and Nurse Supervisor are dismissed.

### 3.      Drs. Naqvi and McCrystal

Mr. Ramos asserts generally that Defendants violated his Ninth and Fourteenth Amendment rights. Liberally construed, Mr. Ramos also asserts a First Amendment retaliation claim against Dr. McCrystal and an Eighth Amendment deliberate indifference to medical needs claim against Drs. McCrystal and Naqvi.

### a.      First Amendment

Mr. Ramos mentions that he has pending civil lawsuits against the Department of Correction. He claims that the decision by Dr. McCrystal to discontinue his pain medication on June 27, 2017, was made in retaliation for lawsuits that he has filed against the Department of Correction.

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be pursued. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts; thus, conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

To state a retaliation claim, Mr. Ramos must show that (1) his conduct or speech was protected by the Constitution or federal law; (2) prison officials took adverse action against him; and (3) the protected conduct or speech was a substantial or motivating factor in the alleged retaliatory or adverse action by prison officials. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations and internal quotation marks omitted).

Although filing lawsuits constitutes a protected First Amendment activity, the Amended Complaint does not allege facts suggesting that the filing of the lawsuits by Mr. Ramos against the Department of Correction was a substantial or motivating factor in the alleged retaliatory conduct by Dr. McCrystal. Dr. McCrystal has not been named as a defendant in any other federal lawsuit filed by Mr. Ramos. Nor does Mr. Ramos assert that Dr. McCrystal was aware of any other lawsuits filed by him against other individuals employed by the Department of Correction.

Because Mr. Ramos's allegations of retaliatory conduct are conclusory, at best, consistent with 28 U.S.C. § 1915A(b)(1), his First Amendment retaliation claim is dismissed under. *See Dorsey v. Fisher*, 468 Fed. App'x. 25, 27 (2d Cir. 2012) ("Without more, where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation.")

### b.    Ninth Amendment

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Second Circuit has recognized, however, that the "Ninth Amendment is not an independent source" of constitutional rights. *Jenkins v. Comm'r of I.R.S.*, 483 F.3d 90, 92 (2d Cir. 2007). Rather, it is a "rule of construction" that courts apply in certain cases. *United States v.*

*Bifield*, 702 F.2d 342, 349 (2d Cir. 1983). Because a § 1983 claim must be premised on the violation of a right guaranteed by the United States Constitution or federal law, the Ninth Amendment, which concerns only unenumerated rights, cannot serve as the basis for a Section 1983 claim. *See Williams v. Perry*, 960 F. Supp. 534, 540 (D. Conn. 1996) ("No independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") (quoting *Rini v. Zwirn*, 886 F. Supp. 270 (E.D.N.Y. 1995)).

Accordingly, consistent with 28 U.S.C. § 1915A(b)(1), Mr. Ramos's Ninth Amendment claim is dismissed for failure to state a claim upon which relief may be granted.

### c.    Fourteenth Amendment

Mr. Ramos asserts that he "has the right to also be treated equal to others in addition to medical care." Am. Compl. ¶ 20.

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). However, "[t]his provision does not mandate identical treatment for each individual." *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009) (citing *City of Cleburne*, 473 U.S. at 439–40).

In order to prove a violation of the Equal Protection Clause, Mr. Ramos must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, Mr. Ramos must allege that (1) compared with others

similarly situated, he was treated differently; and (2) that such different treatment was based on impermissible considerations such as "race, religion, national origin or some other constitutionally protected characteristic." *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted). Mr. Ramos does not allege that Defendants treated him differently because of his membership in a protected class or based on any other impermissible characteristic.

A plaintiff who is not a member of a protected class, however, may also state an equal protection violation under the "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under this theory, Mr. Ramos must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Mr. Ramos must allege an "extremely high degree of similarity" with the person to whom he is comparing himself. *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). Mr. Ramos's circumstances and the other person's circumstances must be "*prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Mr. Ramos does not identify any other inmates who suffer from his specific medical condition, require the same medical treatment, and have been provided with this medical treatment. Thus, Mr. Ramos has not alleged sufficient facts to show the necessary degree of similarity to other inmates to state a class of one equal protection claim. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal of equal protection claim on the ground that mere allegation of less favorable treatment than "similarly

situated" persons failed to state plausible "class of one" equal protection claim) (citation omitted); *Riley v. Roycroft*, No. 16-cv-2227 (VB), 2017 WL 782917, at *8 (S.D.N.Y. Feb. 28, 2017) (finding that conclusory allegation that an inmate was denied medical care that was provided to other similarly situated inmates did not state viable equal protection claim because the inmate "fail[ed] to allege facts that demonstrate[d] a substantial similarity between himself and the other inmates with whom he compare[d] himself"); *Page v. Lantz*, No. 3:03-cv-1271(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding class of one equal protection claims fails as matter of law where the plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances).

Mr. Ramos thus has failed to state a claim that Defendants violated his equal protection rights. Accordingly, consistent with 28 U.S.C. § 1915A(b)(1), his Fourteenth Amendment equal protection claim is dismissed for failure to state a claim upon which relief may be granted.

### d.     Eighth Amendment Claim

Mr. Ramos alleges that he suffers from severe shoulder pain and limited mobility in his shoulder. Deliberate indifference by prison officials to an inmate's serious medical needs can constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

Under the objective component, Mr. Ramos must allege that his medical condition, illness or injury is a "sufficiently serious" one. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if Mr. Ramos suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain. *See Brock v.*

*Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted). Under the subjective component, Mr. Ramos must allege that the defendant prison official acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (internal quotation marks and citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk. *See Salahuddin*, 467 F.3d at 279–80.

Mr. Ramos does not specifically refer to Dr. Naqvi in the body of the Complaint. An exhibit attached to the Complaint, however, indicates that, on June 13, 2016, Dr. Naqvi prescribed Motrin to be taken twice a day for two months to treat Mr. Ramos's pain. *See* Am. Compl. at 16, Ex. B. In response to Mr. Ramos's requests for treatment in July 2016, medical staff members provided Mr. Ramos with pain medication, submitted a request to renew the prescription for pain medication or scanned the order into the pharmacy, and added Mr. Ramos to the list of inmates to be seen by a physician at sick call. *See id.* at 12–14, Ex. A.

Mr. Ramos, however, does not allege that he submitted any requests for medical treatment to Dr. Naqvi after medical staff provided him with care in early August 2016 or that Dr. Naqvi denied or refused to respond to any request that he made for medical treatment. As a result, the Amended Complaint does not state a plausible claim that Dr. Naqvi was deliberately indifferent to Mr. Ramos's shoulder injury or pain.

Accordingly, consistent with 28 U.S.C. § 1915A(b)(1), the Eighth Amendment claim against Dr. Naqvi is dismissed.

Mr. Ramos states that, on June 27, 2017, Dr. McCrystal refused to examine or treat him for his shoulder injury. Instead, he allegedly directed Mr. Ramos to submit a new request to be seen by medical staff regarding his shoulder pain and discontinued his prescription for pain medication. Mr. Ramos states that he suffered from pain every day after Dr. McCrystal discontinued his pain medication.

Mr. Ramos has stated a plausible Eighth Amendment claim of deliberate indifference to medical needs against Dr. McCrystal. That claim will proceed against Dr. McCrystal in his official and individual capacity.

Because Mr. Ramos proceeds *in forma pauperis* and the Court has determined that Mr. Ramos's Eight Amendment claim against Dr. McCrystal shall go forward, under 28 U.S.C. § 1915(d), Mr. Ramos is not responsible for serving the Amending Complaint, and the Clerk of the Court will take the necessary steps to facilitate service of the Amended Complaint on Dr. McCrystal. Accordingly, the motion for service of the Amended Complaint is denied as moot.

**B.      Motions for Default and Default Judgment and Motion for Judgment on Motion for Default Judgment**

Mr. Ramos seeks entry of default against Defendants for failure to plead and requests that a default judgment enter against the Defendants. Because Defendants have not been served with a copy of the Amended Complaint, they are not in default for failure to plead. Accordingly, the motions for default and for default judgment are denied.

The "Judicial Notice Motion for Judgment Regarding Plaintiff Motion for Default Judgment" seeks a ruling on the motions for default and for default judgment. The motion reiterates the arguments in support of the motions for default and for default judgment. As

indicated above, Defendants are not in default. Accordingly, the motion seeking a ruling on the motions for default and for default judgment is denied.

### C.    Injunctive Relief

#### 1.    Free Copies

Mr. Ramos seeks an order directing the Department of Correction or Defendants to provide him with free copies of documents related to this action whenever he might need a copy of a document. He claims that he is indigent and cannot pay the .25 cents per page copying fee charged by the Department of Correction.

The motion is deficient in that it is not signed as required by Rule 11(a) of the Federal Rules of Civil Procedure. Furthermore, it does not meet the standard for granting a request for injunctive relief.

The only remaining claim in this action is a claim that Dr. McCrystal denied Mr. Ramos medication to alleviate the pain in his shoulder. The Amended Complaint does not include a claim that Defendants denied Mr. Ramos copies of documents or access to the courts. Thus, the request for relief seeking free copies of documents is not related to the claims in the Amended Complaint. It would be inappropriate for the Court to grant a request for injunctive relief that is unrelated to the claims and Defendants in the Amended Complaint. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (noting that a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit."); *Johnson v. Vijay-Kumar-Mandalay Wala*, No. 914CV1151LEKDJS, 2016 WL 426547, at *2 (N.D.N.Y. Feb. 3, 2016) (denying motion for mandatory injunction

because relief sought for medical treatment for sinus and skin problems was "unconnected, in time and substance" to inmate's underlying deliberate indifference to medical care claim regarding denial of vitamins); *Mitchell v. N.Y. State Dep't of Corr. Servs.*, No. 06-cv-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (finding that the facts underlying the request for injunctive relief were unrelated to the underlying facts of the claims in the action, except for the fact that they arose in the prison context).

In addition, Mr. Ramos has not alleged that he will suffer imminent harm, if the relief he seeks is not granted to him. Under the Prisoner Electronic Filing Program, Mr. Ramos is required to file documents, motions and memoranda in this case, as well as any other case filed in this Court, using the electronic filing program at the facility in which he is confined. *See* Standing Order On Prisoner Electronic Filing Program, ECF No. 6 at 1. Under the Prisoner Filing Program, Mr. Ramos must submit a document, motion or memorandum to be filed in this case to a designated correctional employee at his facility who then scans the document for filing with the Court. *See id.* at 1–2. After the designated employee files the motion, memorandum or document with the Court, he or she must return the original motion, memorandum or document to Mr. Ramos for his records. *See id.* at 2. Under this Program, Mr. Ramos is not required to mail copies of documents, motions or documents filed in this case to Defendants or counsel for Defendants. *See id.* at 2–3. Under the terms of the Program, Mr. Ramos should have within his possession the original document of anything he has filed with the Court. Mr. Ramos therefore has not indicated why he might need copies of documents that have been filed or will be filed in this federal action. Thus, he has not shown that he will suffer imminent injury if the Court does not grant his

request that the Department of Correction or Dr. McCrystal provide him with free copies of documents.

Accordingly, the motion for free copies is denied.

### 2. Preliminary Injunction

Mr. Ramos claims that he has limited mobility in both of his shoulders and on some days he cannot lift a blanket or his right hand to touch his left shoulder. He states that he has fallen from the top bunk on multiple occasions because of the limited mobility and pain in his shoulders.

Mr. Ramos states that he underwent an MRI at UCONN on April 5, 2018. The MRI reflected that he has an inflamed muscle in his shoulder and there is friction between bones in his shoulder due to swelling. He seeks an order directing Commissioner Semple, Warden Mulligan, and Dr. Naqvi to provide him with a bottom bunk pass, an extra mattress, and pain medication.

As indicated above, Dr. McCrystal is the only remaining defendant in this action. The claim that proceeds relates to Dr. McCrystal's alleged decision in June 2017 to discontinue medication which had been previously prescribed to alleviate the pain in Mr. Ramos's shoulder.

Mr. Ramos does not assert that an examining physician or physicians or any other medical professional at UCONN made any recommendations with regard to treatment of Mr. Ramos's shoulder condition based on the results of the MRI. Rather, Mr. Ramos has made his own determination that he should be sleeping in a bottom bunk on two mattresses and that he requires pain medication.

Mr. Ramos generally concludes that Defendants must be aware of his serious medical condition because the MRI results "are back." Mot. at 8. Mr. Ramos does not assert, however,

that he has discussed the results of the MRI with any medical provider or custody official at MacDougall or that he submitted any specific requests for a bottom bunk pass, or an extra mattress, or pain medication to a medical provider or custody official. Nor are there any allegations that Dr. McCrystal or any other prison official at MacDougall denied him a bottom bunk or an extra mattress or pain medication.

Indeed, the motion was filed less than a month after Mr. Ramos underwent the MRI. He does not indicate that he made use of the Department of Correction's health services remedies or any other administrative remedies available to him at MacDougall prior to filing the motion. *See* State of Connecticut Department of Correction Administrative Directives 9.6 and 8.9.[1]

Lastly, Mr. Ramos has not demonstrated that he is subject to imminent danger or that he will be irreparably harmed, if the Court does not grant the relief he requests. Because the Department of Correction's Administrative Remedies process, including Health Services Reviews, provide an avenue by which Mr. Ramos may seek and secure the relief that he requests, the motion for injunctive relief is denied.

### D. Motion to File a Truth Affidavit and Receive Copies

Mr. Ramos seeks to file a "Truth Affidavit in the Nature of the Supplemental Rules for Administrative and Maritime Claims C(6)." Mot. File Affidavit at 2. He also seeks three certified copies of the "Truth Affidavit" in order to serve all the parties with a copy of it. *See id.* at 1.

---

[1] State of Connecticut Administrative Directive 9.6, Inmate Administrative Remedies, may be found at: www.portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en (effective Aug. 15, 2013). State of Connecticut Administrative Directive 8.9, Administrative Remedy for Health Services, may be found at: www.portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf?la=en (effective July 12, 2012).

As a preliminary matter, although the affidavit includes the signature and stamp of a notary public, it contains no statement that Mr. Ramos swore to its truthfulness on a specific date in front of the notary public. In addition, Mr. Ramos did not subscribe that the statements in the affidavit were true under penalty of perjury. Rather, Mr. Ramos simply states that he prepared the "document." *Id.* at 6. Thus, the document attached to the motion is neither an affidavit nor a declaration. *See* 28 U.S.C. § 1746.

On the first page of the purported affidavit attached to the motion, Mr. Ramos includes statements about commerce, judgments in commerce, and lawful contracts. Mr. Ramos refers to himself as "a Sovereign, a Private Person, a Living Soul, a Creditor, Claimant and Secured Party and Not a STATUTORY PERSON upon the land Connecticut, a Republic in the county called Hartford." Motion, ECF No. 21 at 2. These statements do not pertain to this civil rights lawsuit nor do they support the allegations in the Amended Complaint.

Pages three, five and six of the purported affidavit include allegations about pain in Mr. Ramos's shoulder and treatment or lack of treatment for that condition beginning in November 2012 and continuing through February 2018. These allegations include references to only two named individuals, Dr. McCrystal and a Nurse named Gina regarding visits to the medical department at MacDougall in December 2017 and January 2018. None of the allegations in the purported affidavit were asserted in the Amended Complaint. As indicated above, this case will proceed only as to Dr. McCrystal with regard to his treatment of Mr. Ramos for shoulder pain in late June 2017.

In addition, Mr. Ramos seeks to file the "Truth Affidavit" under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[2] This civil rights action, however, is not a maritime, admiralty, or forfeiture proceeding. Nor is it an *in rem* action. *See* Black's Law Dictionary (10th ed. 2014) ("An action *in rem* is one in which the judgment of the court determines the title to property and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated." (quoting R.H. Graveson, *Conflict of Laws* 98 (7th ed. 1974))); *see, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 364 (2d Cir. 1995) ("[A]n *in rem* action is an action against the arrested *res* itself and any judgment is thus limited to the value thereof or the value of the bond or stipulation substituted for the *res* to obtain its release." (citation omitted)). Thus, there is no basis for permitting Mr. Ramos to file a purported affidavit under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Because the "Truth Affidavit" is not subscribed or sworn under penalty of perjury, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions do not permit the filing of the purported affidavit in this civil rights action seeking monetary damages and injunctive relief and the statements in the affidavit do not support the allegations in the Amended Complaint against Dr. McCrystal, there is no basis for permitting Mr. Ramos to file the purported "Truth Affidavit" in this action. *See United States v. Robinson*, No. 4:11 CR 246

---

[2] Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions governs an action *in rem*. Rule C(6)(a) requires a "(i) person who asserts a right of possession or any ownership interest in the property" involved in an *in rem* proceeding to file a "verified statement of right or interest" in the property at stake "(A) within 14 days after the execution of process, or (B) within the time that the court allows." Supp. R. Adm. Mar.

CDP, 2013 WL 1787571, at *4 (E.D. Mo. Apr. 24, 2013) (noting that documents, including one titled "Truth Affidavit in the Nature of Supplemental Rules

for Administrative and Maritime Claim Rules C(6)" did not have any "legal effect" and denying "any request for relief" sought by defendant "to the extent that [he] believes these documents seek some sort of relief from the court"). Nor is there a basis to provide him with certified copies of the purported affidavit.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Ramos's claims against the UCONN, Commissioner Semple, Warden Chapdelaine, Warden Mulligan, Medical Supervisor Greene, Nurse Jane Doe, and Nurse Supervisor and Mr. Ramos's First, Ninth, and Fourteenth Amendment claims and the Eighth Amendment claim against Dr. Naqvi are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). Thus, all claims against UCONN, Commissioner Semple, Warden Chapdelaine, Warden Mulligan, Dr. Naqvi, Medical Supervisor Greene, Nurse Jane Doe, and Nurse Supervisor have been **DISMISSED**.

A sole claim, Mr. Ramos's Eighth Amendment claim of deliberate indifference to medical needs, will proceed against Dr. Kevin McCrystal in his official and individual capacity. The Court instructs the Clerk of the Court to amend the caption of this case accordingly.

The motion for default, the motions for default judgment, the motion for judgment on motion for default judgment, and the motion to file a "Truth Affidavit" and for copies are all **DENIED**.

The motion for service of summons and the Complaint is **DENIED** as moot, and the

---

C(6)(a)(i)(A) & (B).

motions for free copies and a preliminary injunction are **DENIED**.

Within twenty-one (21) days of this Order, the Clerk of the Court shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint and this Order on Kevin McCrystal in his official capacity by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

Within twenty-one (21) days of this Order, the Clerk of the Court shall ascertain from the Department of Correction Office of Legal Affairs the current work address for Dr. McCrystal and mail a copy of the Complaint, a copy of the Amended Complaint, a copy of this Order and a waiver of service of process request packet to Dr. McCrystal in his individual capacity at his current work address.

On the thirty-fifth (35th) day after mailing, the Clerk of the Court shall report to the Court on the status of each request. If Dr. McCrystal fails to return the waiver request, the Clerk of the Court shall make arrangements for in-person service by the U.S. Marshals Service and the Dr. McCrystal shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

Dr. McCrystal shall file his response to the Amended Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

The *Pro Se* Prisoner Litigation Office shall send a courtesy copy of the Complaint, Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of June, 2018.

　　　 /s/ Victor A. Bolden　　　　　　
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE