UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE RAMOS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:17cv326(KAD) |
| KEVIN MCCRYSTAL, ET AL.,<br>    Defendant. | :<br>:<br>: |

## **RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF #58, ECF # 80)**

**Preliminary Statement**

The plaintiff, Jose Ramos ("Ramos"), brings this civil rights action against Kevin McCrystal ("P.A. McCrystal"), a Physician Assistant[1] with the Connecticut Department of Correction, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution.[2] Specifically, by Amended Complaint dated August 29, 2017, Ramos asserts that on June 27, 2017 he advised P.A. McCrystal that he was suffering from extreme shoulder pain but that P.A. McCrystal provided no treatment and in fact discontinued his prescription pain medications. Both Ramos and P.A. McCrystal have moved for summary judgment. For the reasons set forth below, P.A. McCrystal's motion for summary judgment is GRANTED and Ramos' motion for summary judgment is therefore not reached.

---

[1] Ramos listed Physician Assistant McCrystal as Dr. McCrystal in the amended complaint. It is clear from P.A. McCrystal's Declaration filed in support of his motion for summary judgment that he is a physician assistant and not a physician. Accordingly, in this ruling, the court refers to defendant P.A. McCrystal by his proper title.

[2] After conducting its initial review of the plaintiff's amended complaint, the court dismissed all other claims asserted against P.A. McCrystal as well as numerous other previously named defendants. *See* Ruling and Order, ECF No. 28.

**Standard of Review**

When seeking summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). And the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Id.* The court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however,

summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

On cross-motions for summary judgment the same standard applies. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "Where 'parties file [ ] cross-motions for summary judgment [,] ... each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n. 12 (2d Cir. 2016) (citing *Morales*, 249 F.3d at 121).

Finally, the court recognizes its obligation to read a *pro se* party's papers liberally and and to interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[3]**

P.A. McCrystal was assigned to the MacDougall-Walker Correctional Institution ("MacDougall-Walker") as a physician assistant from 2004 to 2018. P.A. McCrystal Decl. ¶ 4. He worked in the Walker building for approximately six years and worked in the MacDougall building for approximately eight years. *Id.* ¶¶ 4-5. As a physician assistant, he managed the Chronic Disease Clinic ("CDC"), handled inmate sick calls, prescribed medications for inmates

---

[3] The facts are taken from the P.A. McCrystal's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1"); Exhibits A-E, filed in support of the Local Rule 56(a)1 Statement; Ramos's Local Rule 56(a)1 Statement ("Pl.'s L.R. 56(a)1") and Affidavit and Exhibits 1-26 in support of the Statement, and Ramos's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") and Exhibits A & B in support of the Statement.

and provided assistance to physicians when necessary. *Id.* ¶ 7.

Ramos is a sentenced prisoner in the custody of the Department of Correction ("DOC"). Ramos asserts and his medical records confirm that in October 2012, shortly after his admission to DOC custody, he began complaining to medical providers at Corrigan-Radgowski Correctional Institution about pain and limited mobility in his shoulders. Thereafter, between October 2012 and August 2016, medical providers at various DOC facilities prescribed Motrin to treat his shoulder pain. Pl.'s L.R. 56(a)1, Exs. 2-4, 6-17. On June 17, 2016, Ramos was transferred to the MacDougall building of MacDougall-Walker. Pl.'s L.R. 56(a)2, Ex. B at 53.

On May 4, 2017, Ramos submitted an Inmate Request Form[4] to Supervisor Rikel Lightner indicating that he had written multiple times to medical supervisors asking to be seen by a physician and seeking a prescription for medication to treat his shoulder pain. Def.'s L.R. 56(a)1 ¶ 1; Pl.'s L.R. 56(a)2, Ex. B at 32. On May 11, 2017, P.A. McCrystal reviewed Ramos' medical chart, noted that the last x-ray of Ramos's shoulders revealed minimal degenerative joint disease, and prescribed 600 milligrams of Motrin to be taken twice a day for three months to alleviate Ramos's complaints of shoulder pain. Def.'s L.R. 56(a)1 ¶ 2; Ex. B at 8.

On June 27, 2017, P.A. McCrystal met with Ramos in the CDC to assess Ramos' chronic asthma condition. Def.'s L.R. 56(a)1, ¶ 4. Ramos had not requested to be seen for his asthma condition. Pl.'s L.R. 56(a)2 ¶ 5. During the June 27 appointment, Ramos complained of shoulder pain. Def.'s L.R. 56(a)1 ¶ 5; Ex. B at 8. P.A. McCrystal advised Ramos of the protocols for submitting a request to be seen for a more thorough evaluation of his complaint of shoulder pain. Def.'s L.R. 56(a)1 ¶ 7. Although he alleges to the contrary in the Amended

---

[4] This Form, a CN6901, is the omnibus form by which inmates communicate requests to the DOC.

Complaint,[5] Ramos now concedes that he continued to receive Motrin for his shoulder pain until August 8, 2017 pursuant to the order issued by P.A. McCrystal on May 11, 2017. *Id.* ¶ 10.

Ramos received an inmate handbook when he arrived at MacDougall-Walker in 2016. *Id.* ¶ 18. Ramos is familiar with the Department of Correction's administrative remedies process. *Id.* ¶ 17. Ramos did not file a request for health services review regarding his shoulder pain or the alleged inadequacy of his treatment on June 27, 2017. *Id.* ¶ 22.

**Discussion**

Ramos claims that P.A. McCrystal was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment when, on June 27, 2017, he failed to treat Ramos in response to Ramos' complaint of shoulder pain. P.A. McCrystal raises three arguments in support of his motion for summary judgment. He asserts that Ramos did not exhaust available administrative remedies as to the claim that he was deliberately indifferent to Ramos's medical needs on June 27, 2017; that even if proven, the allegations fail to establish deliberate indifference to Ramos's medical needs, and that he is entitled to qualified immunity. Ramos, in support of his motion for summary judgment, contends that there is no dispute that he suffered from a serious medical need and that P.A. McCrystal acted with deliberate indifference to that need.

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions." This provision requires an inmate to exhaust administrative remedies before

---

[5] Ramos alleged that P.A. McCrystal affirmatively stopped the administration of Motrin following the June 27, 2017 assessment.

filing any type of action in federal court. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA requires "proper exhaustion" which includes complying with all "procedural rules" required by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, "procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83-84).

Failure to exhaust administrative remedies pursuant to the 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Thus, it is a defendant's burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").

On this issue, additional undisputed facts are necessary. Inmate concerns or grievances relating to medical issues are governed by Administrative Directive 8.9 (AD 8.9). AD 8.9 provides Health Services Review procedures to address two types of issues or claims regarding the medical, dental or mental health care of an inmate: (1) Diagnosis and Treatment issues and (2) Administrative issues involving a procedure, practice, policy or improper conduct of a health services provider. *See id.* at 8.9(9)(A) & (B). An inmate seeking review of a diagnosis or treatment issue or an administrative issue must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. *See id.* at 8.9(10). The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. *See id.* If an inmate is not happy with the informal

6

resolution of his or her issue, he or she may file an Inmate Administrative Remedy form, CN 9602, seeking a Health Services Review of his diagnosis or treatment or the administrative issue. *See id.* at 8.9(11) & (12).

If the inmate seeks review of his diagnosis or the treatment or lack of treatment of a medical condition, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with an appropriate medical provider as soon as possible. *See id.* at 8.9(11)(A). If, after the appointment, the provider concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *See id.* If the provider reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *See id.* at 8.9(11)(B).

If the inmate seeks review of an administrative issue,[6] the Health Services Coordinator is required to evaluate, investigate and decide the matter within thirty days. *See id.* at 8.9(12)(A). If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision. *See id.* at 8.9(12)(B). The health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal." *See id.* at 8.9(12)(C). If the issue being raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receiving the decision from the health services provider or designated facility health services director. *See id.* at 8.9(12)(D).

---

[6] Ramos' claim appears to fall squarely within the provisions regarding treatment or lack of treatment. The court includes discussion regarding administrative issues in the event his concern might be characterized as such.

There is no dispute that these administrative remedies were in effect in the State of Connecticut Department of Correction in June through August of 2017. Ramos acknowledges that he received an inmate handbook which outlined these procedures at the time he arrived at MacDougall-Walker in 2016. He also acknowledged that he was aware of the Department of Correction's Inmate Administrative Remedies procedures. Def.'s L.R. 56(a)1 ¶¶ 17-18; Ex. C, Ramos Dep. at 20:10-12; 22:13-19. Indeed, at his deposition he was able to describe the process in some detail. *Id.* at 22-23. Accordingly, Ramos knew that he was required to attempt an informal resolution of his concern, and failing that, to file a request for a health services review of his treatment (or lack of treatment) for his shoulder.

The evidence is not in dispute that Ramos did neither. He does not purport to have made any effort to informally resolve the issue of P.A. McCrystal's alleged failure to provide him with treatment on June 27, 2017. Nor do his medical records reflect any such attempt. Def.'s L.R. 56(a)1, Ex. B at 8, 9. Ramos did not see P.A. McCrystal again until December 27, 2017,[7] when Ramos was summoned to the CDC for an appointment to assess his chronic asthma condition. And although Ramos testified that he filed a "grievance" against P.A. McCrystal following the June 27, 2017 encounter, he was unable to produce a copy of the grievance and the DOC has no

---

[7] On December 27, 2017, Ramos demanded treatment for his shoulder and the incident escalated briefly. Thereafter, Ramos sent a cease and desist letter to P.A. McCrystal. At his deposition, Ramos testified as follows:
   Q. Apart from your interaction with Mr. McCrystal, did you file a health service review regarding your shoulder pain?
   A. No. I did not. I sent [the cease and desist letter] to the hospital after dealing with Mr. McCrystal.
   Q. Did you ever file a grievance about Mr. McCrystal's behavior during that day?
   A. This right here, that was it [referring the cease and desist letter] Not with the Department of Corrections but with his hospital, with him and his hospital.
   Q. So nothing internally?
   A. No. I don't consent to doing business with the Department of Corrections.

This exchange further supports the conclusion that Ramos did not file any form of grievance following the June 27, 2017 encounter prior to filing the Amended Complaint.

record of any such grievance. In fact, at his deposition, because he does not "consent to doing business" with the DOC, Ramos testified that he uses what he calls an "international grievance" and his own notice and demand letters to challenge denials of medical treatment or other conduct by Department of Correction employees. Finally, as noted, Ramos testified at his deposition that he did not file a request for Health Services Review regarding P.A. McCrystal's failure to treat or diagnose the cause of his shoulder pain.

Ramos does not address the exhaustion issue beyond asserting that "DOC officials must respond to inmate request form(s) in a timely manner and if not then the inmates remedies are exhusted (sic.) (Whitington v. Ortiz, 472 F. 3d 804 (10th Cir. 2007)." However, the claim against P.A. McCrystal does not derive from or follow any failure to respond to an inmate request form. It derives from P.A. McCrystal's purported failure to diagnose and/or treat Ramos' shoulder pain when he was seen by P.A. McCrystal on June 27, 2017, a claim for which administrative remedies were clearly available.[8]

Neither an "international grievance" nor a notice and demand letter[9] constitute a request for a Health Services Review as delineated in the administrative remedy procedures set forth in Administrative Directive 8.9. Given the specific remedy provided by the Department of

---

[8] This argument is emblematic of a more significant problem with Ramos' case. Throughout his submissions, he refers to events that have nothing to do with this Defendant, as if P.A. McCrystal is responsible for all manner and means of Ramos' medical treatment by DOC personnel. He relies upon the events of December 27, 2017 as supporting his claim, events which post-date the Amended Complaint by four months; he acknowledges that he "did receive medication for a short amount of time and did not receive medication for a prolonged amount of time on multible (sic) occasions;" that the "defendant ordered a three (3) month prescription for motrin for the plaintiff but what of all the time after the 3 months"; he relies upon multiple requests for treatment filed in 2018 through and including April of 2019. These events, and P.A.McCrystal's unknown involvement in them, are simply not before the Court in this lawsuit. The Amended Complaint, filed on August 29, 2017, contains a single, isolated, Eighth Amendment claim. All other defendants and claims were dismissed from the case.

[9] The Court also notes that even if the filing of a self-styled "international grievance" or a notice and demand letter might constitute proper exhaustion, the notice and demand letters referenced by Ramos pertain to the December 2017 incident. And as noted, the Amended Complaint was filed in August 2017. Therefore, the

Correction for claims related to medical diagnoses and treatment, the use of a self-styled international grievance or the submission of a notice and demand letter, does not constitute proper exhaustion under Administrative Directive 8.9. *See Jones*, 549 U.S. at 218 ("it is the prison's [procedural] requirements, and not the PLRA, that define the boundaries of proper exhaustion").

Finally, Ramos has asserted no evidence or claim that the administrative remedies for medical treatment claims, as set forth in Administrative Directive 8.9, were unavailable to him.

Ramos did not comply with the requirement of Administrative Directive 8.9 that he attempt to informally resolve his claim that on June 27, 2017 P.A. McCrystal failed to provide him treatment for or thoroughly evaluate the potential cause of his shoulder pain. Nor is there any dispute that he did not file a health review form. Accordingly, the defendant has met his burden of demonstrating that there is no genuine issue of material fact that prior to filing this action Ramos did not exhaust his available administrative remedies and that summary judgment for the defendant is appropriate. Ramos' motion for summary judgment, which is addressed to the merits of the claim, is therefore not reached.

C**onclusion**

Defendant P.A. McCrystal's Motion for Summary Judgment, [**ECF No. 80**], is **GRANTED** and Ramos's Motion for Summary Judgment, [**ECF No. 58**], is **Terminated**. The Clerk is directed to enter judgment for the defendant and close this case.

---

exhaustion of administrative remedies was required to occur prior to August 2017.

SO ORDERED at Bridgeport, Connecticut, this 25th day of August, 2019.

                                                   ____/s/_____
                                                   Kari A. Dooley
                                                   United States District Judge